1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13

AMAZON.COM, INC., a Delaware
corporation; AMAZON.COM SERVICES LLC,
a Delaware limited liability company; XEROX
CORPORATION, a New York corporation; and
LEXMARK INTERNATIONAL, INC., a
Delaware corporation,

No.

**COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF**

14
15

Plaintiffs,

v.

16
17
18
19
20

BUGRA MURAT AKTAY, an individual;
BERKAN LORCU, an individual; BERKE
YUSUF DEMIR, an individual; KZN GROUP
LLC, a Delaware limited liability company;
SMYRNA COMPANY US LLC, a Delaware
limited liability company; RIVERDAY LTD, a
United Kingdom limited liability company; and
DOES 1-10,

Defendants.

21
22

## I.    INTRODUCTION

23    1.    This case involves Defendants' unlawful and expressly prohibited sale of

24  counterfeit Xerox Corporation ("Xerox") and Lexmark International, Inc. ("Lexmark") toner

25  cartridges. Amazon.com, Inc., and Amazon.com Services LLC (collectively, "Amazon"), Xerox,

26  and Lexmark (together with Amazon, "Plaintiffs") jointly bring this lawsuit to permanently

27  prevent and enjoin Defendants from causing future harm to Amazon's, Xerox's, and Lexmark's

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 1

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

customers, reputations, and intellectual property ("IP"), and to hold Defendants accountable for their illegal actions.

2.      Amazon owns and operates the Amazon.com store (the "Amazon Store") and equivalent counterpart international stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon, while others are sold by Amazon's numerous third-party selling partners. The Amazon brand is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit and infringing goods from being sold in its stores. In 2022 alone, Amazon invested over $1.2 billion and employed more than 15,000 people to protect its stores from fraud and abuse. Amazon stopped over 800,000 suspected bad-actor selling accounts before they published a single listing for sale.

3.      Founded in 1906, Xerox is a pioneer in office technology, notably being the first company to manufacture dry-toner, plain-paper copies. Xerox has harnessed its leadership in providing office and production print technology to expand into software and other services that power today's workforce. From the office to industrial environments, Xerox's differentiated business solutions and financial services are designed to make everyday work better for clients—no matter where that work is being done. Today, Xerox is continuing its legacy of innovation with disruptive technologies, spanning augmented reality to automation and 3D printing. Xerox offers its products in over 160 countries, works with 90% of the Fortune 500 companies, and serves more than 200,000 small and medium-sized businesses.

4.      Xerox owns, manages, enforces, licenses, and maintains IP, including various trademarks. Relevant to this Complaint, Xerox owns the following registered trademarks ("Xerox Trademarks").

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 2

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

| Mark | Registration No. (International Classes) |
|---|---|
| xerox | 5,412,745 (IC 35) |
| XEROX | 3,864,431 (IC 002, IC 009, IC 016, IC 035, IC 037, IC 042) |
| MADE FOR EACH OTHER | 1,924,595 (IC 016) |
| PHASER | 2,935,148 (IC 002) |
| PHASER | 2,788,247 (IC 009) |
| WORKCENTRE | 2,536,680 (IC 002) |
| WORKCENTRE | 2,410,573 (IC 009) |
| WORKCENTRE | 2,053,109 (IC 009) |

True and correct copies of the registration certificates for the Xerox Trademarks are attached as **Exhibit A.**

5.      Founded in 1991, Lexmark is a global leader in the print hardware, service, solutions, and security industries. Lexmark creates cloud-enabled imaging and internet-of-things technologies that help customers in more than 170 countries quickly realize business outcomes. Through a powerful combination of proven technologies and deep industry expertise, Lexmark accelerates business transformation, turning information into insights, data into decisions, and analytics into action. Lexmark serves customers in manufacturing, retail, financial services, healthcare, education, government, and more.

6.      Lexmark owns, manages, enforces, licenses, and maintains IP, including various trademarks. Relevant to this Complaint, Lexmark owns the following registered trademarks ("Lexmark Trademarks").

| Mark | Registration No. (International Classes) |
|---|---|
| LEXMARK | 2,032,389 (IC 009) |
| LEXMARK | 1,956,895 (IC 001, IC 009, IC 016) |

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 3

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

| **Mark** | **Registration No. (International Classes)** |
|----------|----------------------------------------------|
| UNISON | 4,696,348 (IC 002) |
|  | 5,341,087 (IC 002, IC 009, IC 035, IC 037, IC 042) |

True and correct copies of the registration certificates for the Lexmark Trademarks are attached as **Exhibit B.**

7.      From March 2022 to June 2022, Defendants advertised, marketed, offered, and sold counterfeit Xerox and Lexmark products in the Amazon Store, using Xerox's and Lexmark's Trademarks, without authorization, to deceive customers about the authenticity and origin of the products and the products' affiliation with Xerox and Lexmark.

8.      As a result of their illegal actions, Defendants have infringed and misused Xerox's and Lexmark's IP; breached their contract with Amazon; willfully deceived and harmed Amazon, Xerox, Lexmark, and their customers; compromised the integrity of the Amazon Store; and undermined the trust that customers place in Amazon, Xerox, and Lexmark. Defendants' illegal actions have caused Amazon, Xerox, and Lexmark to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm to Amazon, Xerox, Lexmark, and their customers.

## II.      PARTIES

9.      Amazon.com, Inc., is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

10.      Xerox is a New York corporation with its principal executive offices in Norwalk, Connecticut. Xerox's largest base of employees is in and around Rochester, New York, including its lead engineering, design and manufacturing campus in Webster, New York.

11.      Lexmark is a Delaware corporation with its principal place of business in Lexington, Kentucky.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

12.     Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this Complaint. Defendants are the individuals and/or entities who operated, controlled and/or were responsible for the selling accounts detailed in Section D of the Facts ("Defendants' Selling Accounts" or "Selling Accounts"). Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory infringement.

13.     On information and belief, Defendant Bugra Murat Aktay ("Aktay") is an individual residing in Istanbul, Turkey, who personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct. Aktay is registered as the individual who operated the "River Day" Amazon selling account (the "River Day Selling Account"). Aktay is also identified on inbound shipment labels as the return addressee for the River Day Selling Account. Finally, Aktay is listed as an officer and/or director of Riverday LTD.

14.     On information and belief, Defendant Berkan Lorcu ("Lorcu") is an individual residing in Istanbul, Turkey, who personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct. Lorcu is registered as the individual who operated the "River Day Toner Cartridge/Smyrna US LLC" Amazon selling account (the "River Day Toner Cartridge Selling Account"). Lorcu is also identified on inbound shipment labels as the return addressee for the River Day Toner Cartridge Selling Account.

15.     On information and belief, Defendant Berke Yusuf Demir ("Demir") is an individual residing in Istanbul, Turkey, who personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit from that wrongful conduct. Demir is identified on inbound

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 5

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

shipment labels as the return addressee for the Selling Accounts. Finally, Demir, like Aktay, is listed as an officer and/or director of Riverday LTD.

16.     On information and belief, Defendant KZN Group LLC ("KZN Group") is a limited liability company incorporated in Delaware. On further information and belief, Defendant KZN Group personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit as a result of that wrongful conduct. KZN Group is registered as the legal entity that operated the River Day Selling Account.

17.     On information and belief, Defendant Smyrna Company US LLC ("Smyrna Company") is a limited liability company incorporated in Delaware. On further information and belief, Defendant Smyrna Company personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit as a result of that wrongful conduct. Smyrna Company is registered as the legal entity that operated the River Day Toner Cartridge Selling Account.

18.     On information and belief, Defendant Riverday LTD is a limited liability company incorporated in the United Kingdom. On further information and belief, Defendant Riverday LTD personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and derived a direct financial benefit as a result of that wrongful conduct.

19.     On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and/or entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, and sell counterfeit Xerox and Lexmark products. The identities of the Doe Defendants are presently unknown to Plaintiffs.

### III.     JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction over Xerox's and Lexmark's Lanham Act claims for trademark infringement, and Amazon's, Xerox's, and Lexmark's Lanham Act

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

claims for false designation of origin and false advertising, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon's breach of contract claim, and Amazon's, Xerox's, and Lexmark's claims for violation of the Washington Consumer Protection Act, pursuant to 28 U.S.C. §§ 1332 and 1367.

21.     The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Amazon's, Xerox's, and Lexmark's claims arise from those activities. Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington State, and sold in the Amazon Store products bearing counterfeit versions of the Xerox Trademarks and Lexmark Trademarks and which otherwise infringed Xerox's and Lexmark's IP. Additionally, Defendants shipped products bearing counterfeit versions of the Xerox Trademarks and Lexmark Trademarks to consumers in Washington. Each Defendant committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon, Xerox, and Lexmark substantial injury in Washington.

22.     Further, the named Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of IP rights and claims related to the sale of counterfeit products in the Amazon Store are the state or federal courts located in King County, Washington.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington. Venue is also proper in this Court because Defendants consented to it under the BSA.

24.     Pursuant to Local Civil Rule 3(c), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

## IV.     FACTS

### A.     Amazon's Efforts to Prevent the Sale of Counterfeit Goods

25.     Amazon works hard to build and protect the reputation of its stores as a place where customers can conveniently select from a wide array of authentic goods and services at competitive prices. Amazon invests vast resources to ensure that when customers make purchases in Amazon's stores—either directly from Amazon or from one of its millions of third-party sellers—customers receive authentic products made by the true manufacturer of those products.

26.     A small number of bad actors seek to take advantage of the trust customers place in Amazon by attempting to create Amazon selling accounts to advertise, market, offer, and sell counterfeit products. These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers. This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon, and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

27.     Amazon continues to innovate to stay ahead of bad actors, and now requires live verification, connecting prospective selling partners with Amazon employees through video chats or in-person appointments to verify their identity and documentation. Amazon reviews the seller-provided identity documents to determine whether those documents are both valid and legitimate, such as confirming that the seller has provided a full legible copy of the document, verifying that the document matches the information the seller provided to Amazon with respect to their identity, and analyzing whether the document shows any signs of alteration, tampering, or fabrication. These measures have made it more difficult for bad actors to hide. Amazon's seller verification, coupled with continued advancements in Amazon's machine learning-based detection, are deterring bad actors from even attempting to create new Amazon selling accounts. The number of bad actor attempts to create new selling accounts decreased from 6 million attempts in 2020, to 2.5 million attempts in 2021, to 800,000 attempts in 2022.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 8

28.     Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of its customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products from ever being offered to customers in Amazon's stores. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in Amazon's stores. Amazon's systems automatically and continuously scan thousands of data points to detect and remove counterfeits from its stores and to terminate the selling accounts of bad actors before they can offer counterfeit products. When Amazon identifies issues based on this feedback, it takes action to address them. Amazon also uses this intelligence to improve its proactive prevention controls.

29.     In 2017, Amazon launched Brand Registry, a free service that offers rights owners an enhanced suite of tools for monitoring and reporting potential instances of infringement, regardless of their relationship with Amazon. Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP. Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for and report potentially infringing products using state-of-the-art image search technology. In 2022, through continued improvements in Amazon's automated protections, brands found fewer infringing products in Amazon's stores, with the number of valid notices of infringement submitted by brands in Brand Registry decreasing by more than 35% from 2021.

30.     In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products. Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers, law enforcement, and customers to determine the authenticity of any Transparency-enabled product, regardless of where the product was purchased. In 2022, over 33,000 brands were using Transparency, an increase of 40% from 2021, enabling the protection of more than 900 million product units across the supply chain.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 9

31.     In 2019, Amazon launched Project Zero, a program to empower brands to help Amazon drive counterfeits to zero. Amazon's Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from Amazon's stores. This enables brands to take down counterfeit product offerings on their own within minutes. In 2022, there were more than 22,000 brands enrolled in Project Zero. For every listing removed by a brand, Amazon's automated protections removed more than 1,000 listings through scaled technology and machine learning, stopping those listings from appearing in Amazon's stores.

32.     Once a seller begins selling in Amazon's stores, Amazon continues to monitor the selling account's activities for risks. If Amazon identifies a bad actor, it closes that actor's selling account, withholds funds disbursement, and investigates whether other accounts are involved in unlawful activities.

33.     In addition to the measures discussed above, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits, like this one, as well as criminal referrals, are integral components of Amazon's efforts to combat counterfeits, and other inauthentic products.

**B.      Xerox and Lexmark and Their Anti-Counterfeiting Efforts**

34.     Xerox goes to great lengths to protect consumers from counterfeits of its products, and is committed to leading efforts to combat counterfeit products. Xerox utilizes both internal and external resources to combat counterfeit and infringing products. These enforcement efforts include employing trained staff who monitor for bad actors selling counterfeits and commissioning external services to protect Xerox's IP rights and customer trust.

35.     Xerox is currently enrolled in Amazon Brand Registry. It has been actively using the tools and protections provided by this program, and used them to identify the counterfeiting activity described in this Complaint.

36.     Lexmark also goes to great lengths to protect consumers from counterfeits of its products, and is committed to leading efforts to combat counterfeit products. Lexmark utilizes

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 10

both internal and external resources to combat counterfeit and infringing products. These enforcement efforts include employing trained staff who monitor for bad actors selling counterfeits and commissioning external services to protect Lexmark's IP rights and customer trust.

37.     Lexmark is currently enrolled in Amazon Brand Registry. It has been actively using the tools and protections provided by this program, and used them to identify the counterfeiting activity described in this Complaint.

**C.     Defendants Created the Selling Accounts and Agreed Not to Sell Counterfeit Goods**

38.     Between March 2022 and June 2022, Defendants established, controlled, and operated the River Day Selling Account and the River Day Toner Cartridge Selling Account, detailed in Section D below, through which they sought to advertise, market, sell, and distribute counterfeit Xerox and Lexmark products. In connection with these Selling Accounts, Defendants provided Amazon with names, email addresses, and banking information.

39.     The two Selling Accounts have various common characteristics that make it probable that the accounts are being operated by one or more Defendants acting in concert. Significantly, Defendants sent packages that contained counterfeit Xerox and Lexmark products to Amazon fulfillment centers for both Selling Accounts and identified one common individual, Demir, as the sender on the shipping labels. Defendant Demir is an officer and/or director of Riverday LTD, through which, on information and belief, Defendants directed their counterfeit scheme. In fact, both Selling Accounts adopted some version of the "River Day" name for their Amazon storefronts (i.e., "River Day" and "River Day Toner Cartridge"), signaling their connection to Riverday LTD. Aktay, who registered as the individual behind the River Day Selling Account, is also listed as an officer and/or director of Riverday LTD.

40.     To become a third-party seller in the Amazon Store, sellers are required to agree to the BSA, which governs the applicant's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon Store. By entering into the BSA, each seller represents

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

and warrants that it "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights" under the BSA. A true and correct copy of the applicable version of the BSA, namely, the version Defendants last agreed to when using Amazon's services, is attached as **Exhibit C**.

41.    Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of Amazon's policies, reserving the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Ex. C, ¶¶ 2-3. The BSA requires the seller to defend, indemnify and hold harmless Amazon against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.* ¶ 6.1.

42.    Additionally, the BSA incorporates, and sellers therefore agree to be bound by, Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit D**. The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon Store:

- The sale of counterfeit products is strictly prohibited.

- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]

- You must provide records about the authenticity of your products if Amazon requests that documentation[.]

- Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfillment centers, and other legal consequences.

*Id.*

43.    Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store together with the consequences of doing so:

- Sell Only Authentic and Legal Products. It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:

  o  Bootlegs, fakes, or pirated copies of products or content

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

o   Products that have been illegally replicated, reproduced, or manufactured

o   Products that infringe another party's intellectual property rights

•   Maintain and Provide Inventory Records. Amazon may request that you
    provide documentation (such as invoices) showing the authenticity of your
    products or your authorization to list them for sale. You may remove pricing
    information from these documents, but providing documents that have been
    edited in any other way or that are misleading is a violation of this policy and
    will lead to enforcement against your account.

•   Consequences of Selling Inauthentic Products. If you sell inauthentic
    products, we may immediately suspend or terminate your Amazon selling
    account (and any related accounts), destroy any inauthentic products in our
    fulfillment centers at your expense, and/or withhold payments to you.

•   Amazon Takes Action to Protect Customers and Rights Owners. Amazon also
    works with manufacturers, rights holders, content owners, vendors, and
    sellers to improve the ways we detect and prevent inauthentic products from
    reaching our customers. As a result of our detection and enforcement
    activities, Amazon may:

    o   Remove suspect listings.

    o   Take legal action against parties who knowingly violate this policy and
        harm our customers. In addition to criminal fines and imprisonment,
        sellers and suppliers of inauthentic products may face civil penalties
        including the loss of any amounts received from the sale of inauthentic
        products, the damage or harm sustained by the rights holders, statutory
        and other damages, and attorney's fees.

•   Reporting Inauthentic Products. We stand behind the products sold on our site
    with our A-to-z Guarantee, and we encourage rights owners who have
    product authenticity concerns to notify us. We will promptly investigate and
    take all appropriate actions to protect customers, sellers, and rights holders.
    You may view counterfeit complaints on the Account Health page in Seller
    Central.

*Id.*

44.     When they registered as third-party sellers in the Amazon Store, and established
their Selling Accounts, Defendants agreed not to advertise, market, offer, sell or distribute
counterfeit products.

**D.     Defendants' Sale of Counterfeit Xerox and Lexmark Products**

45.     Defendants advertised, marketed, offered, and sold Xerox-branded and Lexmark-
branded products in the Amazon Store. Xerox and Lexmark have conducted multiple test

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 13

purchases from Defendants' Selling Accounts, and determined that the products are counterfeit and each bears counterfeit Xerox registered trademarks or Lexmark registered trademarks.

**Selling Account #1 – River Day Selling Account**

46.     On information and belief, at all times described herein, the River Day Selling Account was controlled and operated by Defendants Aktay, Demir, KZN Group, Lorcu, Smyrna Company, Riverday LTD, and other parties, known and unknown.

47.     On June 10, 2022, Lexmark conducted a test purchase from the River Day Selling Account of a product advertised as an authentic version of a Lexmark-branded "Lexmark 76C00Y0 Yellow Toner Cartridge for CS92x CX92x Toner." Defendants shipped to Lexmark a product that bears the Lexmark Trademarks and other indications of its brand. Lexmark has examined the product and determined that it is counterfeit based on indicators such as improper serial numbers and incorrect packaging.

48.     On June 10, 2022, Lexmark conducted a test purchase from the River Day Selling Account for a product advertised as an authentic version of a Lexmark-branded "Original Lexmark T650H11A 25000 Yield Black Toner Cartridge – Retail." Defendants shipped to Lexmark a product that bears the Lexmark Trademarks and other indications of its brand. Lexmark has examined the product and determined that it is counterfeit based on indicators such as improper serial numbers and incorrect packaging.

**Selling Account # 2 – River Day Toner Cartridge Selling Account**

49.     On information and belief, at all times described herein, the River Day Toner Cartridge Selling Account was controlled and operated by Defendants Lorcu, Demir, Smyrna Company, Aktay, KZN Group, Riverday LTD, and other parties, known and unknown.

50.     On or about April 4, 2022, Xerox conducted a test purchase from the River Day Toner Cartridge Selling Account for a product advertised as an authentic version of a Xerox-branded "Xerox VersaLink B600/B610 Black High Capacity Toner Cartridge (25,900 Pages) - 106R03942." Defendants shipped to Xerox a product that bears the Xerox Trademarks and other indications of its brand. Xerox has examined the product and determined that it is counterfeit

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 14

based on indicators such as a counterfeit holographic security label, incorrect serial numbers, and improper packaging.

51.     On or about April 21, 2022, Xerox conducted a test purchase from the River Day Toner Cartridge Selling Account for a product advertised as an authentic version of a Xerox-branded "Xerox Phaser 3610/ WorkCentre 3615 Black Extra High Capacity Toner Cartridge (25,300 Pages) - 106R02731." Defendants shipped to Xerox a product that bears the Xerox Trademarks and other indications of its brand. Xerox has examined the product and determined that it is counterfeit based on indicators such as a counterfeit holographic security label, incorrect serial numbers, and improper packaging.

52.     On or about April 21, 2022, Xerox conducted a test purchase from the River Day Toner Cartridge Selling Account for a product advertised as an authentic version of a Xerox-branded "Xerox VersaLink C400/C405 Cyan, Magenta, Yellow, and Black High Capacity Toner Cartridge Multi-Pack (5,000 Pages) - 106R03512, 106R03513." Defendants shipped to Xerox a product that bears the Xerox Trademarks and other indications of its brand. Xerox has examined the product and determined that it is counterfeit based on indicators such as counterfeit holographic security label, incorrect serial numbers, and improper packaging.

**E.     Amazon Shut Down Defendants' Selling Accounts**

53.     By selling counterfeit and infringing Xerox and Lexmark products, Defendants falsely represented to Amazon and its customers that the products Defendants sold were genuine products made by Xerox and Lexmark. Defendants also knowingly and willfully used Xerox's and Lexmark's IP in connection with the advertisement, marketing, distribution, offering for sale, and sale of counterfeit and infringing Xerox and Lexmark products.

54.     At all times, Defendants knew they were prohibited from violating third-party IP rights or any applicable laws while selling products in the Amazon Store. Defendants have breached the terms of their agreement with Amazon, deceived Amazon's customers and Amazon, infringed and misused the IP rights of Xerox and Lexmark, caused Amazon to issue refunds to customers based on Xerox's and Lexmark's confirmations that the products were

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 15

inauthentic, harmed the integrity of and customer trust in the Amazon Store, and tarnished Amazon's, Xerox's, and Lexmark's brands.

55.     After receiving notice from Xerox and Lexmark of Defendants' activities, Amazon verified Defendants' unlawful sale of counterfeit Xerox and Lexmark products and blocked Defendants' Selling Accounts. In doing so, Amazon exercised its rights under the BSA to protect its customers and the reputations of Amazon, Xerox, and Lexmark.

56.     Pursuant to Amazon's A-to-z guarantee, Amazon also proactively issued full refunds to customers who purchased purported Xerox and Lexmark products from Defendants. Defendants have not reimbursed Amazon.

## V.      CLAIMS

### FIRST CLAIM
*(by Xerox and Lexmark against all Defendants)*
**Trademark Infringement – 15 U.S.C. § 1114**

57.     Plaintiffs Xerox and Lexmark incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

58.     Defendants' activities constitute infringement of the Xerox Trademarks and Lexmark Trademarks as described in the paragraphs above.

59.     Xerox owns the Xerox Trademarks and advertises, markets, offers, and sells its products using the Xerox Trademarks described above and uses those trademarks to distinguish its products from the products and related items of others in the same or related fields.

60.     Because of Xerox's long, continuous, and exclusive use of the Xerox Trademarks identified in this Complaint, the trademarks have come to mean, and are understood by customers and the public to signify, products from Xerox.

61.     Lexmark owns the Lexmark Trademarks and advertises, markets, offers, and sells its products using the Lexmark Trademarks described above and uses those trademarks to distinguish its products from the products and related items of others in the same or related fields.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

62.     Because of Lexmark's long, continuous, and exclusive use of the Lexmark Trademarks identified in this Complaint, the trademarks have come to mean, and are understood by customers and the public to signify, products from Lexmark.

63.     Defendants unlawfully advertised, marketed, offered, and sold products bearing counterfeit versions of the Xerox Trademarks and Lexmark Trademarks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Specifically, Defendants intended customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by Xerox or Lexmark and likely caused such erroneous customer beliefs.

64.     As a result of Defendants' wrongful conduct, Xerox and Lexmark are entitled to recover actual damages, Defendants' profits attributable to the infringement, and treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, Xerox and Lexmark are entitled to statutory damages under 15 U.S.C. § 1117(c).

65.     Xerox and Lexmark are further entitled to injunctive relief, including an order impounding all infringing products and promotional materials in Defendants' possession. Xerox and Lexmark have no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Xerox Trademarks and Lexmark Trademarks are unique and valuable properties that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Xerox and Lexmark and Xerox's and Lexmark's reputation and goodwill such that Xerox and Lexmark cannot be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d)  the resulting harm to Xerox and Lexmark, due to Defendants' wrongful conduct is likely to be continuing.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1
2

## SECOND CLAIM
### *(by Xerox and Lexmark against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

3       66.     Plaintiffs Xerox and Lexmark incorporate by reference the allegations of the
4    preceding paragraphs as though set forth herein.

5       67.     Xerox owns the Xerox Trademarks and advertises, markets, offers, and sells its
6    products using those trademarks described above and uses the trademarks to distinguish its
7    products from the products and related items of others in the same or related fields.

8       68.     Because of Xerox's long, continuous, and exclusive use of the Xerox Trademarks,
9    they have come to mean, and are understood by customers, end users, and the public, to signify
10   products from Xerox.

11      69.     Lexmark owns the Lexmark Trademarks and advertises, markets, offers, and sells
12   its products using those trademarks described above and uses the trademarks to distinguish its
13   products from the products and related items of others in the same or related fields.

14      70.     Because of Lexmark's long, continuous, and exclusive use of the Lexmark
15   Trademarks, they have come to mean, and are understood by customers, end users, and the
16   public, to signify products from Lexmark.

17      71.     Defendants' wrongful conduct includes the infringement of the Xerox
18   Trademarks and Lexmark Trademarks in connection with Defendants' commercial advertising or
19   promotion, and offering for sale and sale, of counterfeit Xerox and Lexmark products in
20   interstate commerce.

21      72.     In advertising, marketing, offering, and selling products bearing counterfeit
22   versions of the Xerox Trademarks or Lexmark Trademarks, Defendants have used, and on
23   information and belief continue to use, the trademarks referenced above to compete unfairly with
24   Xerox and Lexmark and to deceive customers. Upon information and belief, Defendants'
25   wrongful conduct misleads and confuses customers and the public as to the origin and
26   authenticity of the goods and services advertised, marketed, offered, or sold in connection with

27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

the Xerox Trademarks and Lexmark Trademarks and wrongfully trades upon Xerox's and Lexmark's goodwill and business reputation.

73.     Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by Xerox or Lexmark, all in violation of 15 U.S.C. § 1125(a)(1)(A).

74.     Defendants' conduct also constitutes willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

75.     Xerox and Lexmark are entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below. Defendants' acts have caused irreparable injury to Xerox and Lexmark. On information and belief, that injury is continuing. An award of monetary damages cannot fully compensate Xerox and Lexmark for their injuries, and Xerox and Lexmark lack an adequate remedy at law.

76.     Xerox and Lexmark are further entitled to recover Defendants' profits, Xerox's and Lexmark's damages for their losses, and Xerox's and Lexmark's costs to investigate and remediate Defendants' conduct and bring this action, including its attorneys' fees, in an amount to be determined. Xerox and Lexmark are also entitled to the trebling of any damages award as allowed by law.

**THIRD CLAIM**
*(by Amazon against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

77.     Plaintiff Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

78.     Amazon's reputation for trustworthiness is at the heart of its relationship with customers. Defendants' actions in selling counterfeits pose a threat to Amazon's reputation because they undermine and jeopardize customer trust in the Amazon Store.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 19

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

79.     Specifically, Defendants deceived Amazon and its customers about the authenticity of the products they were advertising, marketing, offering, and selling, in direct and willful violation of the BSA and Amazon's Anti-Counterfeiting Policies. Defendants' deceptive acts were material to Amazon's decision to allow Defendants to sell their products in the Amazon Store because Amazon would not have allowed Defendants to do so but for their deceptive acts.

80.     In advertising, marketing, offering, and selling counterfeit Xerox and Lexmark products in the Amazon Store, Defendants made false and misleading statements of fact about the origin, sponsorship, or approval of those products in violation of 15 U.S.C. § 1125(a)(1)(A).

81.     Defendants' acts also constitute willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

82.     As described above, Defendants, through their illegal acts, have willfully deceived Amazon and its customers, jeopardized the trust that customers place in the Amazon Store, tarnished Amazon's brand and reputation, and harmed Amazon and its customers. Defendants' misconduct has also caused Amazon to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from causing further harm to Amazon and its customers. Defendants' illegal acts have caused irreparable injury to Amazon and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish selling accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon for its injuries, and thus Amazon lacks an adequate remedy at law.

83.     Amazon is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with its attorneys' fees and costs in investigating and bringing this lawsuit.

84.     Amazon is also entitled to recover its damages arising from Defendants' sale of counterfeit products in the Amazon Store.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 20

1
2

## FOURTH CLAIM
### *(by Xerox, Lexmark, and Amazon against all Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010, *et seq.***

3       85.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as

4   though set forth herein.

5       86.     Defendants' advertising, marketing, offering, distribution, and sale of counterfeit

6   Xerox and Lexmark products constitute an unfair method of competition and unfair and

7   deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

8       87.     Defendants' advertising, marketing, offering, distribution, and sale of counterfeit

9   Xerox and Lexmark products harm the public interest by deceiving customers about the

10  authenticity, origins, and sponsorship of the products.

11      88.     Defendants' advertising, marketing, offering, distribution, and sale of counterfeit

12  Xerox and Lexmark products directly and proximately cause harm to and tarnish Plaintiffs'

13  reputations and brands, and damages their business and property interests and rights.

14      89.     Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and

15  recover from Defendants their attorneys' fees and costs. Xerox and Lexmark further seek to

16  recover from Defendants their actual damages, trebled, and Amazon further seeks to recover

17  from Defendants its actual damages, trebled, regarding Defendants activities involving the sale

18  of counterfeit products.

## FIFTH CLAIM
### *(by Amazon.com Services LLC[1] against all Defendants)*
**Breach of Contract**

21      90.     Plaintiff Amazon incorporates by reference the allegations of the preceding

22  paragraphs as though set forth herein.

23      91.     Defendants established the Selling Accounts and entered into Amazon's BSA, a

24  binding and enforceable contract between Defendants and Amazon. Defendants also

25  contractually agreed to be bound by the policies incorporated by reference into the BSA,

26  including Amazon's Anti-Counterfeiting Policy and other policies as maintained on the Amazon

27  _____
[1] For the Fifth Claim only, "Amazon" shall refer to Amazon.com Services LLC only.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 21

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1    seller website.

2        92.    Amazon performed all obligations required of it under the terms of the contract

3    with Defendants or was excused from doing so.

4        93.    Defendants' sale and distribution of counterfeit Xerox and Lexmark products

5    materially breached the BSA and the Anti-Counterfeiting Policy in numerous ways. Among

6    other things, Defendants' conduct constitutes infringement and misuse of the IP rights of Xerox

7    and Lexmark.

8        94.    Defendants' breaches have caused significant harm to Amazon, and Amazon is

9    entitled to damages in an amount to be determined.

10                        **VI.    PRAYER FOR RELIEF**

11       WHEREFORE, Plaintiffs respectfully pray for the following relief:

12       A.    That the Court enter an order permanently enjoining Defendants, their officers,

13   agents, representatives, servants, employees, successors, and assigns, and all others in active

14   concert or participation with them, from:

15               (i)     selling products in Amazon's stores;

16               (ii)    selling products to Amazon or any affiliate;

17               (iii)   opening or attempting to open any Amazon selling accounts;

18               (iv)    importing, manufacturing, producing, distributing, circulating, offering to

19                       sell, selling, advertising, promoting, or displaying any product or service

20                       using any simulation, reproduction, counterfeit, copy, or colorable

21                       imitation of Xerox's or Lexmark's brand or trademarks, or which

22                       otherwise infringes Xerox's or Lexmark's IP, on any platform or in any

23                       medium;

24               (v)     assisting, aiding or abetting any other person or business entity in

25                       engaging or performing any of the activities referred to in subparagraphs

26                       (i) through (iv) above;

27       B.    That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 22

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

C.      That the Court enter an order pursuant to 15 U.S.C. § 1118 impounding and permitting destruction of all counterfeit and infringing products bearing the Xerox Trademarks or Lexmark Trademarks or that otherwise infringe Xerox's or Lexmark's IP, and any related materials, including business records and materials used to reproduce any infringing products, in Defendants' possession or under their control;

D.      That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

E.      That the Court enter an order requiring Defendants to pay all general, special, and actual damages which Xerox and Lexmark have sustained, or will sustain as a consequence of Defendants' unlawful acts, plus Defendants' profits from the unlawful conduct described herein, together with its statutory damages, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law, and that Amazon's damages, plus Defendants' profits, related to Defendants' activities involving the sale of counterfeit products be enhanced, doubled, or trebled as provided by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

F.      That the Court enter an order requiring Defendants to pay the maximum amount of prejudgment interest authorized by law;

G.      That the Court enter an order requiring Defendants to pay the costs of this action and Plaintiffs' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

H.      That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

I.      That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1    DATED this 14th day of April, 2023.

2                                          DAVIS WRIGHT TREMAINE LLP
                                           *Attorneys for Plaintiffs*
3

4                                          By *s/ Scott R. Commerson*
                                           Scott R. Commerson, WSBA #58085
5                                          865 South Figueroa Street, Suite 2400
                                           Los Angeles, CA 90017-2566
6                                          Tel: (213) 633-6800
                                           Fax: (213) 633-6899
7                                          Email: scottcommerson@dwt.com

8
                                           *s/ Emma Englund*
9                                          Emma Englund, WSBA #56178
                                           920 Fifth Avenue, Suite 3300
10                                         Seattle, WA 98104-1604
                                           Tel: (206) 622-3150
11                                         Fax: (206) 757-7700
                                           Email: emmaenglund@dwt.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 24

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax